**C.R. HENDRICKS, et al., Plaintiffs–Respondents,**

v.

**Bobby NORTHCUTT and Delores Northcutt, Defendants–Appellants.**

**No. 17260.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 6, 1991.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 30, 1991.

James M. Turnbow, Hayti, Michael B. Hazel, Caruthersville, and William M. Barvick, Jefferson City, for plaintiffs-respondents.

Jim R. Bruce, Kennett, for defendants-appellants.

MAUS, Judge.

On August 7, 1985, Joe Agnes Holly (Holly) sold defendants Bobby Northcutt and Delores Northcutt, his wife, (Northcutts), 16.4 acres of land in Pemiscot County. As a part of that transaction, Holly granted the Northcutts a right of first refusal upon sale and an option to purchase, on Holly's death, 50 acres of an adjoining tract of 224 acres. Within the same month, Holly transferred the entire adjoining tract of 224 acres to her daughter, Josephine Claire Turnage (Turnage). Holly died.

Eight months later, Turnage died. Forty-seven months after Holly's death, the plaintiffs, as the successors in interest of Holly and Turnage, brought this action to declare that the right of first refusal and option to purchase had expired and that the Northcutts had no right, title or interest in the 50 acres. Northcutts counterclaimed and sought damages for loss of crop rental, the denial of their ownership rights, legal expenses, punitive damages and specific performance. They also sought an adjudication that the plaintiffs and their predecessors breached the option contract by their failure "to offer the 50–acre tract to defendants." The trial court dismissed Northcutts' counterclaim. After a trial on the merits of the petition, the trial court found Northcutts failed to timely exercise their option to purchase and that the Northcutts have no interest in the 50 acres. Northcutts appeal.

Northcutts' first contention on appeal is that the trial court erred in dismissing their counterclaim because "the facts alleged for claim is for fraudulent conveyance and the non-claim statutes are inapplicable." Ordinarily, the propriety of that dismissal would be reviewed under the following standard:

"Our review of the dismissal of the petition allows the pleading its broadest intendment, we treat all facts alleged as true, construe the allegations favorably to the plaintiff and determine whether the averments invoke principles of substantive law." *Shapiro v. Columbia Un. Nat. Bank & Trust Company*, 576 S.W.2d 310, 312 (Mo. banc 1978), cert. denied, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

Northcutts' second contention is the trial court erred in finding they failed to timely exercise their option to purchase and in entering judgment that they have no right, title or interest in the 50 acres. Whether the trial court erred in entering judgment for the plaintiffs upon the merits is to be measured by the standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ For the reasons hereafter stated, this court holds that the trial court did not err in entering judgment for the plaintiffs upon their petition. Northcutts' counterclaim was, of necessity, founded upon the propositions that their right of first refusal was breached and their option to purchase had not terminated. Upon trial on the merits of the petition, those issues were determined adversely to the Northcutts.

"Thus it clearly appears that plaintiff had available a full trial on all of its contentions on the singular ultimate issue presented by its petition and defendant's counterclaim. The court therefore holds that in these particulars, and in a sense peculiar circumstances, no purpose would be served by considering and deciding procedural matters which occurred prior to the trial as they would not affect the ultimate decision on the merits of this appeal." *Lakewood Park Cemetery Ass'n v. Met. St. Louis Sewer Dist.*, 530 S.W.2d 240, 245 (Mo. banc 1975).

That being so with respect to the ultimate issues presented by Northcutts' counterclaim, it is not necessary to consider the propriety of the dismissal of that counterclaim. *Lakewood Park Cemetery Ass'n v. Met. St. Louis Sewer Dist.*, supra; *Duenke v. Brummett*, 801 S.W.2d 759 (Mo.App. 1991); *Longmore v. Merwin*, 585 S.W.2d 545 (Mo.App.1979).

The following is an outline of the facts necessary to determine the propriety of the judgment on the petition in favor of the plaintiffs. As stated, on August 7, 1985, Holly sold 16.4 acres to the Northcutts. As a part of that transaction, Holly executed an instrument entitled "Option to Purchase Real Estate" granting to Northcutts "the following option with respect to a Fifty Acre tract of land [description omitted]:

1. Seller hereby gives and grants to Buyer, their heirs and assigns, the exclusive option and privilege of purchasing from my estate, after my death, all right, title, or interest which my estate may have in or to the above described property at a purchase price of Fourteen Hundred Dollars ($1,400.00) per acre. Purchaser may exercise this option and privilege by tendering to my executor or ad-

ministrator the purchase price at any time not later than one (1) year after my death.

2. In the event that Seller shall decide, during her life time, to Sell the above described property, she shall first offer the property to Buyer for the sale price of Fourteen Hundred Dollars ($1,400.00) per acre. Buyer shall have sixty (60) days from such offering in which to accept or reject the same.

3. This agreement shall inure to the benefit of and be binding upon the heirs, representatives, and assigns of the parties."

On August 30, 1985, Holly, by way of gift, conveyed a tract of 224 acres which included the "Fifty Acre tract" to her daughter Turnage. On February 11, 1986, Holly died testate. On March 25, 1986, Letters Testamentary on her estate were issued to Arline Avery. On May 19, 1986, attorney William O. Welman, on behalf of the personal representative of Holly, returned to attorney Jim R. Bruce, representing Northcutts, U.S. Department of Agriculture forms pertaining to the 224 acres leased by Holly to the Northcutts. Welman explained that he learned that Holly had conveyed the 224 acres to Turnage and therefore the personal representative could not execute the forms pertaining to the farm. On June 4, 1986, Bruce, on behalf of Northcutts, again wrote Welman concerning the leased real property. He also stated "they [Northcutts] are now interested in exercising the option but are reluctant to do so as long as the ownership of the real property is unresolved." He asked that Welman inform him of the action the estate intended to take concerning title to "the real estate in question" and whether or not the estate would give the Northcutts a quitclaim deed to the 50 acres. On June 13, 1986, Welman replied. He stated that he did not know if the estate would institute any action in respect to the real property. He further stated that he did not believe there was any authority for the estate to give the Northcutts a quitclaim deed.

In May of 1986, Northcutts entered into negotiations to purchase the Fifty Acre tract from Turnage for $1,200 per acre. On October 12, 1986, Turnage died testate. In November of 1986, Margie Ann Bennett was appointed Personal Representative of the Turnage estate.

On a date not disclosed by the record, Jessie Mead, Allie Bowman and Hazel Thweatt, sisters of Holly, instituted an action against Margie Bennett as Personal Representative of the Estate of Turnage, to set aside the conveyance of August 30, 1985, by which Holly conveyed the farm to Turnage. The status of the sisters as the "real parties in interest" is not disclosed by the petition. As a basis for recovery, they alleged the incapacity of Holly. They further alleged that if the deed of August 30, 1985 is set aside, they "will inherit the above described real estate through the Jo [sic] Agnes Holly Estate." A lis pendens concerning this action was filed on January 29, 1987. This action was settled by Margie Bennett, as Personal Representative of the Turnage estate, executing an instrument dated August 31, 1988, which on its face purported to convey an undivided one-half interest in the farm to Arline Avery, as Personal Representative of the Estate of Joe Agnes Holly. The record does not show any judicial authorization for this purported conveyance. For this reason, and other deficiencies in the record, and because of the limited issues presented, this opinion should not be construed as determining the status of the title to the 224 acres, except the determination that the defendants have no right, title or interest in that 224 acres.

The record discloses that on September 8, 1989, Northcutts filed a Notice of Lis Pendens. This notice advised that Northcutts, as plaintiffs, had commenced an action in the Circuit Court of Dunklin County against Margie Bennett, Individually and as Personal Representative of the Estate of Turnage. The notice further stated: "The action asserts the option was breached as the result of undue influence on the part of Margie Bennett and intentional interference with the legal rights of the North-

cutts." This action was subsequently dismissed.

The petition in the action before this court was filed January 3, 1990. The plaintiffs are C.R. Hendricks, as Successor Personal Representative of the Estate of Turnage, Jessie Mead, as Successor Personal Representative of the Estate of Holly, and seven individuals claiming under a deed of a one-sixth interest in the farm executed by Margie Bennett, as Personal Representative of the Estate of Turnage. The defendants are Northcutts. The allegations of the petition and the Northcutts' counterclaim have been noted. The counterclaim was dismissed. Judgment was entered in favor of the plaintiffs on their petition.

Northcutts' basic allegation of error is:

"The Circuit Court erred in ruling Defendants had failed to timely exercise their option to purchase real estate because the optionor had breached the option contract in which she had granted Defendants the right of first refusal to purchase fifty (50) acres of farmland during her lifetime and the exclusive option to purchase it from her estate within one year of her death in that she made a voluntary conveyance of all of her property to her daughter without first offering it to Defendants such that it was impossible for Defendants to exercise the option when they learned of the transfer following her death."

This point relies upon the proposition that Holly's conveyance, or gift, of the 50-acre tract to her daughter Turnage was a breach of the right of first refusal, or preemptive right, granted to Northcutts.

The trial court implicitly found that Holly's conveyance to Turnage was not a breach of the "right of first refusal" or preemptive right created by Paragraph 2 of the instrument executed by Holly.

" ' "A pre-emption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price...." ' " *Barling v. Horn*, 296 S.W.2d 94, 98 (Mo.1956).

The preemptive right granted the Northcutts was created by the following language. "In the event that Seller shall decide, during her lifetime, to sell...." If construction is required to determine if Holly's conveyance to Turnage was a breach of the preemptive right, Paragraph 2 is to be construed against the Northcutts. *Estate of Polete v. Campbell*, 764 S.W.2d 179 (Mo.App.1989). However, construction is not necessary. Paragraph 2 by unequivocal language expressly conditions the preemptive right upon Holly's decision to *sell* the property during her lifetime. *Gilmore v. Letcher*, 508 S.W.2d 257 (Mo.App. 1974). Her conveyance, by way of gift to her daughter Turnage, did not breach the agreement creating the preemptive right. See Annot., *Right of First Refusal—"Sale"*, 70 A.L.R.3d 203 (1976).

■ The trial court expressly found the Northcutts did not timely exercise their option to purchase and that it expired. Northcutts assert that was error.

The nature of an option and the extent of the rights granted under Paragraph 1 of the option agreement have been summarized.

"An option is unilateral and does not ripen into a contract of purchase and sale until exercised by the optionee. Until the optionee accepts there is no enforceable contract, the option being in effect but an offer on the part of the optionor, although an offer binding on the optionor by virtue of the consideration paid for the option until the time stipulated for the acceptance of the offer has expired. The optionee in exercising the option may or may not be required to pay the purchase price, or a part thereof, within the time, depending upon the terms of the option or offer. Ordinarily time is of the essence in the exercise of an option, and the requirement of the payment of the purchase price within the time stipulated for acceptance of the offer or exer-

cise of the option is essential where the option by its terms makes such payment a part of or a condition precedent to the exercise thereof. The option by its terms may require a written notice of acceptance. *If there be no stipulation as to the mode, manner or way the optionee should give notice of acceptance, any manifestation of the determination to accept will suffice,* with resultant contract of purchase and sale (if the essential terms of such a contract, or method of determining them, are set forth in the written option or offer). *Chapman v. Breeze,* 355 Mo. 873, 198 S.W.2d 717; *Suhre v. Busch,* 343 Mo. 170, 120 S.W.2d 47; *Lively v. Tabor,* 341 Mo. 352, 107 S.W.2d 62, 111 A.L.R. 976; *Hollmann v. Conlon,* 143 Mo. 369, 45 S.W. 275; *James on Option Contracts,* § 415, pp. 183–185." *Lusco v. Tavitian,* 296 S.W.2d 14, 16 (Mo.1956). (Emphasis added.)

Also see *Elliott v. Delaney,* 217 Mo. 14, 116 S.W. 494 (1909). The option granted in Paragraph 1, as written, calls for its acceptance by tendering to Holly's personal representative the purchase price not later than one year after her death. At the time of her death, Holly had conveyed, by way of gift, the 50 acres to her daughter Turnage. However, this did not, as the Northcutts contend, make their acceptance of the option impossible. *Elliott v. Delaney,* supra; *Dean Operations, Inc. v. Pink Hill Associates,* 678 S.W.2d 897 (Mo.App.1984).

A conveyance expressly subject to an option does not violate that option nor terminate it nor dispense with the necessity of an acceptance within the prescribed time.

"The giving of an option to purchase does not deprive the optionor of the right during the life of the option to sell the land subject to the rights of the optionee, and a sale to one with notice of, and subject, to the option, is not a breach of the option contract. (Footnote omitted.)" 77 Am.Jur.2d, *Vendor and Purchaser,* § 27.

Also see *Elliott v. Delaney,* supra; *C & J Delivery v. Vinyard & Lee & Partners,* 647 S.W.2d 564 (Mo.App.1983); 91 C.J.S. *Vendor & Purchaser,* § 4.

Holly's conveyance to Turnage was a voluntary conveyance. Turnage was not a bona fide purchaser. The conveyance and her title was subject to the option. See *Dean Operations, Inc. v. Pink Hill Associates,* supra. Northcutts were aware of the voluntary nature of Holly's conveyance. They negotiated with Turnage for the purchase of the Fifty Acre tract for $1,200 per acre.

"The general rule is that the time prescribed for exercise of an option is of the essence, and if the option is not exercised within the time limited all rights of the optionee stand forfeited without notice. *Lusco v. Tavitian,* 296 S.W.2d 14 (Mo. 1956)." *Wilson v. Edwards,* 560 S.W.2d 608, 612 (Mo.App.1978).

In the circumstances of this case, Northcutts may not use the conveyance to Turnage as an excuse for their failure to accept the option within the time limited. Had Holly not conveyed the property to Turnage, the Northcutts could have properly accepted by tendering the purchase price to the personal representative and filing an action exercising the option and seeking specific performance. See 77 Am.Jur.2d, *Vendor and Purchaser,* § 40. Since Holly had conveyed, Northcutts could have properly accepted by filing such an action for specific performance against Holly's personal representative, and Turnage, and tendering the purchase price into court. If Northcutts delayed until the death of Turnage and the commencement of the action by Mead and others, Northcutts could have also joined the personal representative and successors of Turnage and the sisters of Holly as defendants. Cf. *Dean Operations, Inc. v. Pink Hill Associates,* supra.

In any event, it was mandatory that within the time limited the Northcutts in writing unconditionally manifest their acceptance of the offer embodied in the option. Their expression of "interest" in exercising the option was not such an unconditional acceptance. *Frey v. Yust,* 516 S.W.2d 321 (Mo.App.1974). To adopt Northcutts' position would mean that the option period was extended until the "Holly

estate" had, upon some basis, recovered the title from Turnage or her successors. The Northcutts did not manifest their election to exercise their option within the time limited and it did expire. The judgment of the trial court is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.