**D.T. WINTER, Personal Representative of the Estate of Josephine Claire Turnage, Deceased, Respondent,**

v.

**Bobby NORTHCUTT and Delores Northcutt, Appellants.**

No. 18855.

Missouri Court of Appeals,
Southern District,
Division Two.

June 6, 1994.

Motion for Rehearing or Transfer to
Supreme Court Denied
June 23, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Jim R. Bruce, Kennett, for appellants.

William M. Barvick, Jefferson City, James M. Turnbow, Hayti, for respondent.

CROW, Judge.

The trial court entered judgment for one dollar and costs in favor of Plaintiff, D.T. Winter, Personal Representative of the Estate of Josephine Claire Turnage, Deceased, against Defendants, Bobby Northcutt and Delores Northcutt, in an action described by Plaintiff as one for slander of title to real estate. Defendants appeal, asserting the action is barred "by the res judicata and collateral estoppel effect of the judgment in an earlier case." That case is *Hendricks v. Northcutt*, 820 S.W.2d 689 (Mo.App.S.D. 1991). We henceforth refer to it as "No. 17260," the number assigned it in this Court.

Many of the facts narrated in No. 17260 are pertinent to the present appeal. To avoid unnecessary length in the present opinion, we shall not repeat those facts, but shall set forth only such additional facts as are needed for consideration of the present issues. To marshal all the relevant facts, one must read No. 17260 as a preface to the present opinion.

The present action originated from two documents. Each is mentioned in No. 17260.

The first document is an "Option to Purchase Real Estate" ("the Option") executed August 7, 1985, by Joe Agnes Holly. No. 17260 refers to her as "Holly." So shall we.

The Option was part of a transaction in which Holly sold 16.4 acres of land to Defendants. 820 S.W.2d at 690. Most, if not all, of that 16.4-acre tract lies in the northeast quarter of the southeast quarter of section 12, township 16, range 11, in Pemiscot County.

The Option described the tract it covered as:

"... a Fifty Acre tract ... in the Northeast Quarter of the Southeast Quarter of Section 12, Township 16 North, Range 11 East, Pemiscot County, Missouri, lying adjacent to and west of the [16.4-acre] tract of land purchased by [Defendants] from [Holly]...."[1]

---

1. An alert reader will realize that a quarter of a quarter of a section of standard size contains 40 acres. *Zweemer v. Cantrell*, 823 S.W.2d 531, 533[2] (Mo.App.S.D.1992). Inasmuch as most, if

The terms of the Option are set forth in No. 17260. 820 S.W.2d at 690–91.

The second document pertinent to the present action is a "Notice of Lis Pendens" ("the Notice") filed by Defendants in the office of the Recorder of Pemiscot County. As reported in No. 17260, it was filed September 8, 1989. 820 S.W.2d at 691.

The Notice stated that the lawsuit to which it referred arose from the Option. The Notice described the land covered by the Option as:

> "A fifty (50) acre tract of land lying in the NW 1/4 and SW 1/4 of the SE 1/4 of Section 12, Township 16 North, Range 11 East. Said property is North of a drainage ditch across said quarter section and westward of a certain tract of land sold to Bobby and Delores Northcutt [by Holly]. . . ."

As we have seen, the description of the 50–acre tract in the Option places the tract in the northeast quarter of the southeast quarter of section 12, township 16, range 11. The description in the Option makes no reference to the northwest quarter of the southeast quarter or the southwest quarter of the southeast quarter of section 12 (the two quarter-quarter sections identified in the Notice). It is thus apparent that the description in the Option and the description in the Notice do not match.

The petition in No. 17260 was filed January 3, 1990. 820 S.W.2d at 692. One of the nine plaintiffs in that suit was C.R. Hendricks, then Personal Representative of the Estate of Josephine Claire Turnage, Deceased. No. 17260 refers to Josephine Claire Turnage as "Turnage." So shall we.

Another of the plaintiffs in No. 17260 was Jessie Mead, Personal Representative of Holly's estate.

There were two defendants in No. 17260: Bobby Northcutt and Delores Northcutt (Defendants in the present action).

The petition in No. 17260 pled that the plaintiffs own the southeast quarter of section 12, township 16, range 11, containing 160 acres, more or less, in Pemiscot County, except 16.4 acres previously conveyed to Defendants. The petition further pled that Defendants claim rights in the plaintiffs' land based on the Option (recorded by the Recorder of Pemiscot County), that Defendants recorded the Notice, thereby creating a cloud on the title to the plaintiffs' land, that Defendants were not entitled to exercise the Option, that the Notice covers property not included in the Option, and that the Notice is void. The petition prayed the trial court to declare the Option void, to declare the Option and Notice are clouds upon the plaintiffs' title, to order Defendants to file a release of the Notice with the Recorder of Pemiscot County, and to declare that Defendants have no right, title or interest in the plaintiffs' property.

On February 13, 1990, 41 days after the petition in No. 17260 was filed, two of the plaintiffs in that suit, C.R. Hendricks and Jessie Mead, in their respective capacities as personal representatives of decedents Turnage and Holly, filed the present action.

The petition in the present action concerns the identical land involved in No. 17260. The petition in the present action avers Hendricks and Mead are "partial owners" (presumably in their representative, not individual, capacities) of that land. The petition further avers that Defendants recorded the Notice on September 8, 1989, that the lawsuit identified in the Notice is based on the Option, that Defendants knew the Notice described land not covered by the Option, that the lawyer for Hendricks and Mead reported the error to Defendants' lawyer, that Defendants refused to release the Notice or correct the erroneous description in it, that Defendants knew Hendricks, Mead and others had found a buyer for the land described in the petition (and No. 17260), and that Defendants recorded the Notice with malicious intent to cast a cloud on the title to that land and thereby obtain money. The petition in the present action prays for compensatory and punitive damages.

---

not all, of the 16.4–acre tract bought by Defendants from Holly lies in the northeast quarter of the southeast quarter of section 12, township 16, range 11, it is impossible for there to be 50 more acres in that same quarter-quarter section.

No. 17260 moved more rapidly through the trial court than the present action. On November 19, 1990, the trial court entered judgment in No. 17260 providing, in pertinent part:

"The Court ... finds for the Plaintiffs and against the Defendants. The Court finds that the Defendants have failed to exercise their Option to Purchase said real estate within the time limitations set forth in the Option to Purchase Real Estate the Defendants acquired on August 7, 1985. The Court declares that based upon its aforementioned finding and the equitable defense of laches, the Defendants have no enforceable interest in the property in question...."

Following entry of that judgment, Defendants amended their answer in the present action. By the amendment, Defendants asserted that the present action is barred by res judicata and collateral estoppel, based on the judgment in No. 17260. Defendants pled that Personal Representatives Hendricks and Mead were barred from relitigating not only the issues raised in No. 17260, but all other issues which could have been raised there.

In an opinion filed December 6, 1991, this Court affirmed the trial court's judgment in No. 17260. 820 S.W.2d at 689–94.

On July 21, 1992, Defendants filed a motion for summary judgment in the present action. It was argued November 23, 1992. By that time, D.T. Winter had replaced Hendricks as Personal Representative of Turnage's estate.

At the hearing, Defendants insisted they were entitled to judgment in their favor because No. 17260 was "res judicata as to all issues which were raised or which could have been raised." Defendants asserted the claim for compensatory and punitive damages in the present action was the same claim on which the relief in No. 17260 had been granted. Therefore, said Defendants, the personal representatives of Turnage and Holly could have added a prayer for money damages in No. 17260.

The trial court denied Defendants' motion for summary judgment. In a letter setting forth its analysis, the trial court said:

"It is the opinion of the Court that Plaintiffs' claim for damages resulting from the tortious acts of the Defendants are not barred by Res judicata. As you are aware, the case involving these same parties ( [No. 17260] ), involved Plaintiffs' Petition for Declaratory Judgment concerning an alleged option to purchase real estate claimed by these Defendants.

The case at hand is a suit for damages concerning the alleged tortious actions of the Defendants concerning the filing of a Notice of Lis Pendens effecting [sic] the property in question. Although I note that the parties are similar and there may be some similar nuances affecting each suit, it is the Court's opinion that the case at hand should not be barred by Res judicata."

On April 6, 1993, a document designated "Plaintiffs' Motion for Partial Summary Judgment," signed by the lawyer for Personal Representative Winter (Turnage's estate), but not by the lawyer for Personal Representative Mead (Holly's estate), was filed in the trial court. It ended with a prayer by "Plaintiffs" for summary judgment in their favor "on the issue of liability only."

On April 23, 1993, Personal Representative Mead (Holly's estate) dismissed her claim with prejudice. We glean from the legal file that the dismissal was the result of a settlement between Personal Representative Mead and Defendants. Because this development left Personal Representative Winter as the sole plaintiff, we henceforth refer to Winter as "Plaintiff."

That same day (April 23, 1993), the trial court granted Plaintiff summary judgment against Defendants "on the issue of liability only."

On April 27, 1993, Plaintiff filed in the trial court a document designated "Waiver of Substantial Damages." It read, in pertinent part:

"Comes now Plaintiff ... and herewith waives the determination of substantial damages in this case by a jury and moves the Court for entry of a judgment for nominal damages only."

Six days later, the trial court entered the judgment described in the first sentence of

this opinion. Defendants thereafter filed a timely notice of appeal.

At oral argument, Defendants abandoned the second of the two points relied on in their brief. Their first point, as reported in the second sentence of this opinion, asserts the present action is barred "by the res judicata and collateral estoppel effect" of the judgment in No. 17260.

■ Traditionally, res judicata (claim preclusion) bars the same parties or their privies from relitigating *the same cause of action,* whereas collateral estoppel (issue preclusion) bars the same parties or their privies from relitigating *issues* which have been previously litigated. *American Polled Hereford Assn. v. City of Kansas City,* 626 S.W.2d 237, 241[3] (Mo.1982).

■ The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. *Barkley v. Carter County State Bank,* 791 S.W.2d 906, 910 (Mo.App.S.D.1990).

■ Generally, in order to have estoppel by a former judgment (res judicata), there must be: (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of the persons and parties to the action, and (4) identity of the quality of the person for or against whom the claim is made. *Norval v. Whitesell,* 605 S.W.2d 789, 790 (Mo. banc 1980).

Defendants maintain No. 17260 meets all four requirements. Defendants refer us to *Terre Du Lac Association, Inc. v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 212[7] (Mo.App. E.D.1987), which states the doctrine of res judicata provides that, where two actions are on the same cause of action, the earlier judgment is conclusive not only as to matters actually determined in the prior action, but also as to other matters which could properly have been raised and determined therein. Defendants argue here, as they did in the trial court, that Plaintiff could have presented the money damage claim in No. 17260.

Therefore, insist Defendants, Plaintiff is barred by res judicata from bringing the present action for money damages.

Plaintiff responds by citing *Ganaway v. Shelter Mutual Insurance Co.,* 795 S.W.2d 554 (Mo.App.S.D.1990). There, a passenger injured in an automobile accident sued the driver's liability insurer for damages on the theory that the insurer refused, in bad faith, to settle the passenger's claim against the driver, thereby becoming liable for a judgment recovered by the passenger against the driver exceeding the policy limits. The insurer pled the action was barred by res judicata in that the passenger and the driver were parties to an earlier declaratory judgment suit brought by the insurer to obtain a declaration of its obligation under the policy. Rejecting that defense, this Court said:

> "What [the insurer] suggests, quite incorrectly, is that the declaratory judgment should be held to be conclusive not only of all matters actually adjudicated thereby but, in addition, of all matters which could have been presented for adjudication. That rule does not apply to declaratory judgments, which are res judicata only as to those matters actually declared."

*Id.* at 562[9].

*Ganaway* is consistent with an earlier case, *Farley v. Missouri Department of Natural Resources,* 592 S.W.2d 539 (Mo.App. W.D.1979), also cited by Plaintiff. There, the court noted the general rule of res judicata— an earlier judgment on the same cause of action ordinarily is conclusive between the parties, not only of every matter litigated but of every matter which could have been litigated. *Id.* at 540[1]. The opinion continued:

> "However, suits for declaratory judgments do not fall within the general rule. According to virtually unanimous authorities, the effect of a prior declaratory judgment, although conclusive as to matters declared, is not to merge in the judgment a subsequent claim for coercive relief arising out of the same cause of action."

*Id.* at 540–41[2] (citations omitted).

Plaintiff proclaims No. 17260 was a declaratory judgment suit, hence the judgment there does not preclude the present action.

The only effect of No. 17260, according to Plaintiff, is to provide collateral estoppel on those matters actually adjudicated.

Defendants, in their reply brief, argue No. 17260 was "a quiet title action specifically governed by § 527.150 [RSMo 1986] rather than one for declaratory judgment." Defendants correctly point out that the petition in No. 17260 did not denominate that action as one for declaratory judgment. Defendants insist that the relief sought by the plaintiffs in No. 17260 demonstrates that such action was "one to quiet title and remove alleged clouds upon that title." Therefore, say Defendants, the res judicata exception for declaratory judgments recognized in *Ganaway* and *Farley* does not apply here.

With the issue thus framed, one might assume all we need do to resolve this appeal is to decide whether No. 17260 was an action to quiet title or for declaratory judgment. However, that would not be easy. In *Evans v. Brussel*, 300 S.W.2d 442, 444[3] (Mo.1957), we find this:

"The judgment in a suit to ascertain, determine and define title under Section 527.150 is essentially a declaratory judgment...."

The above passage suggests there may be little, if any, difference between an action to quiet title and an action for declaratory judgment.

A different view appears in Restatement (Second) of Judgments § 33, comments *c* and *d*, pp. 335, 337 (1982):

"When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action.

. . . . .

Pleaders sometimes interpolate declaratory prayers redundantly in stan-

dard actions but this should not produce differences in the res judicata consequences of those actions.... For res judicata purposes the action should be treated as an adversary personal action concluded by a personal judgment with the usual consequences of merger, bar, and issue preclusion.... [A]n action to adjudicate interests in property, *such as an action to quiet title*, or to establish a status, such as divorce, may be cast in declaratory form. This should not alter the res judicata effects of the judgments." (Emphasis added.)

For the reasons that follow, we need not decide whether No. 17260 was an action to quiet title or for declaratory judgment.

In *Cimasi v. City of Fenton*, 838 F.2d 298 (8th Cir.1988), a corporation entered into a commercial lease to operate a bar and restaurant. The corporation obtained a liquor license from the State of Missouri and from St. Louis County. When the corporation applied to the City of Fenton for a liquor license, the City denied the application. The corporation filed suit in the Circuit Court of St. Louis County seeking a declaratory judgment that the City's liquor license ordinance was invalid, injunctive relief against its enforcement, and attorney fees. The circuit court granted the relief requested. On appeal, the Eastern District of this Court affirmed the holding that the ordinance was void, but reversed the award of injunctive relief and attorney fees. *Cimasi v. City of Fenton*, 659 S.W.2d 532 (Mo.App.E.D.1983). Thereafter, the corporation filed a claim for damages in the United States District Court, Eastern District of Missouri, under the Civil Rights Act, 42 U.S.C. § 1983 (1982). That court dismissed the claim on the ground that the earlier state court action precluded the § 1983 claim. That ruling was upheld by the United States Court of Appeals, Eighth Circuit, which explained:

"In the original state court suit [the corporation] sought not only declaratory relief but coercive relief as well. We think it clear that [the corporation's] section 1983 claim is now barred under Missouri law. As the district court held, where a party seeks declaratory relief as well as

affirmative relief through a coercive remedy, the exception under *Farley v. Missouri Dep't of Nat'l Resources*, 592 S.W.2d 539 (Mo.App.1979) does not apply. (*Farley* recognized an exception to res judicata where a plaintiff seeks solely to obtain declaratory relief in the original suit. 592 S.W.2d at 541)."

838 F.2d at 299.

As reported earlier, the relief prayed for by the plaintiffs in No. 17260 included an order commanding Defendants to file a release of the Notice with the Recorder of Pemiscot County. Thus, the relief sought in No. 17260 went beyond mere declaratory relief.

We are mindful, of course, that the relief granted in No. 17260 included no coercive relief, but only declaratory relief. However, that was also the situation in *Cimasi* where, as a result of the ruling by the Eastern District of this Court, the corporation ended up with only a judicial declaration that the ordinance in dispute was invalid. Nonetheless, the United States Court of Appeals, Eighth Circuit, applying Missouri law, held that because the corporation sought coercive relief in addition to declaratory relief in the state court suit, the res judicata exception for judgments in declaratory judgment actions did not apply.

■ Consistent with *Cimasi*, 838 F.2d at 299, we hold that if No. 17260 was, as Plaintiff contends, an action for declaratory relief, the request in the prayer for an order commanding Defendants to file a release of the Notice with the Recorder of Pemiscot County renders No. 17260 ineligible for the res judicata exception applicable to judgments in actions seeking only declaratory relief.

■ If No. 17260 was an action to quiet title, the portions of comments *c* and *d* from Restatement (Second) of Judgments § 33, quoted earlier, demonstrate that the usual res judicata consequences of a judgment apply (assuming arguendo that the four elements set forth in *Norval*, 605 S.W.2d at 790, are present). Plaintiff does not dispute that proposition.

Plaintiff does, however, maintain that two of the four elements are not present. According to Plaintiff, there is no "identity of the thing sued for" (element 1) and no "identity of the cause of action" (element 2) in No. 17260 and the present action.

Element 2 was discussed in *Barkley*, 791 S.W.2d at 912–13, where this Court quoted the following passage from *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10[1, 2] (1948):

"The tests for determining whether a cause of action is single and cannot be split, have been said to be: (1) whether separate actions brought thereon arise out of the same 'act, contract or transaction'; (2) or, whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. Our decisions have pretty generally employed the first of these tests, and use one or more of the words 'act'; 'contract' or 'transaction'. And our Civil Code, itself, now and in the past, has used the word 'transaction' as stating the basis of a cause of action, or claim, or counterclaim.

But the phrase 'cause of action' and the word 'transaction' both have broad meanings. The former does not refer to the *form* of action in which the claim is asserted, but to the *cause for* action, i.e., the underlying facts combined with the law giving the party a *right* to a remedy of one form or another based thereon. And the latter word ('transaction') has an even broader meaning. It has been defined as including the aggregate of all the circumstances which constitute the foundation for a claim, counterclaim, etc." (Footnotes omitted) (Emphasis in original).

Here, Plaintiff argues that No. 17260 and the present action are not based on the same acts of Defendants. Plaintiff asserts that all facts relevant to No. 17260 had occurred by February 11, 1987 (one year after Holly died). Plaintiff states the present action is based on Defendants' recording of the Notice on September 8, 1989.

We disagree. The Option and the Notice were inextricably linked in No. 17260. The Notice stated that the lawsuit to which it referred arose from the Option. The Option ostensibly covered land in only the northeast quarter of the southeast quarter of the desig-

nated section, township and range. The Notice described land in the northwest quarter of the southeast quarter and the southwest quarter of the southeast quarter of the same section, township and range. The petition in No. 17260 pled that the plaintiffs own the entire southeast quarter of that section, township and range except 16.4 acres conveyed earlier to Defendants.

The petition in No. 17260 further pled that the recording of the Notice by Defendants created a cloud on the plaintiffs' title and that the Notice was void. The petition prayed the trial court, among other things, to declare the Option and Notice are clouds upon the plaintiffs' title, to order Defendants to file a release of the Notice with the Recorder of Pemiscot County, and to declare that Defendants have no right, title or interest in the plaintiffs' property. That property obviously included the land described in the Notice.

It is thus evident that the facts giving the plaintiffs a right to a remedy in No. 17260 are the same facts on which Plaintiff bases the present action. That is, the "aggregate of all the circumstances which constitute the foundation" for the claim in No. 17260 and the claim in the present action is the same. *Grue*, 210 S.W.2d at 10. Furthermore, the relief granted in No. 17260—the declaration that Defendants had no enforceable interest in the property in question—covered all the land the plaintiffs claimed they own. 820 S.W.2d at 691. We hold element 2—identity of the cause of action—is present here.

As to element 1—identity of the thing sued for—it was pointed out in *Barkley*, 791 S.W.2d at 910 n. 4, that one text writer has referred to that element alternatively as "subject matter of the suit."

In No. 17260, the subject matter was the cloud on the title to the plaintiffs' land created by the Option and the Notice. The relief sought in No. 17260 was elimination of the cloud.

In the present action, the subject matter is the same cloud and the same land. The only difference is that the relief sought in the present action is money damages for causing the cloud.

We hold that element 1—identity of the thing sued for, i.e., the subject matter of the suit—is present here.

It follows that the judgment in No. 17260 constitutes a res judicata bar to the present action.

The judgment is reversed.

FLANIGAN, P.J., and GARRISON, J., concur.