**Keith HAMILTON and Everett Downing, Appellants,**

v.

**Charles C. SPENCER, James F. Whitson, R. Leroy Clark, Harold C. Callaway, Loren L. Lawrence, James S. Gabbert, and Donald L. Jordan, Respondents.**

No. WD 51857.

Missouri Court of Appeals, Western District.

June 25, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied Oct. 22, 1996.

Ronald M. Sokol, St. Joseph, for appellants.

Errol D. Taylor, St. Joseph, for respondents.

LOWENSTEIN, P.J., and HANNA and SPINDEN, JJ.

SPINDEN, Judge.

Buchanan County Mutual Insurance Company's board of directors fired Keith Hamilton and Everett Downing as sales agents in February 1989.[1] Hamilton and Downing sued the directors for violating Missouri's antitrust laws, for interfering with their business relations, for committing conversion,[2] and for civil conspiracy.

The directors filed a joint motion for summary judgment in which they alleged that Hamilton and Downing lacked standing and evidence to support an action for antitrust and that they had no evidence of wrongful activity to support a claim of tortious interference with a business relationship or civil conspiracy. The directors also asserted that Hamilton's and Downing's claims were preempted by §§ 375.031–375.039, RSMo 1994. The circuit court granted summary judgment on all counts. We affirm.

## Tortious Interference With a Contract or Business Relationship

In the first of their four points on appeal, Hamilton and Downing contend that the circuit court erred in granting the directors' motion for summary judgment concerning tortious interference with a contract or business relationship. They argue that the directors did not support their motion with probative evidence that their firing Hamilton and Downing was justified.

A defendant who moves for summary judgment need not controvert each element of the plaintiffs' claim to establish a right to summary judgment. A defendant may establish a right to summary judgment by showing (1) facts that negate *any one* of the claimant's elements; (2) that the plaintiff, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements; or (3) a lack of genuine dispute as to *each* of the facts necessary to support the movant's properly pleaded affirmative defense. *ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). "[W]hen the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04(e), shall set forth specific facts showing that there is a genuine issue for trial." *Id.*

The elements of tortious interference with a contract or business relationship are (1) a contract or a valid business relationship or expectancy; (2) defendant's knowledge of the contract or relationship; (3) defendant's intentional inducing or causing a breach of the contract or relationship; (4) without justification; and (5) damages resulting from defendant's conduct. *Forkin v. Container Recovery Corporation*, 835 S.W.2d 500, 502 (Mo.App.1992); *Minnesota Mining & Manufacturing Company v. Williamson*, 675 S.W.2d 951, 953 (Mo.App.1984). A plain-

1. Hamilton and Downing were also principals and shareholders of Hamilton Downing Insurance Services, Inc., which sold insurance for several other mutual, assessable insurance companies.

2. They voluntarily dismissed this count.

tiff must prove that the defendant lacked justification for his or her conduct. *Capobianco v. Pulitzer Publishing Company*, 812 S.W.2d 852, 860 (Mo.App.1991). "Absence of justification is the absence of any legal right to take the actions complained of.... If a party had a legal right to terminate, then any claim against that party for tortious interference fails." *Meyer v. Enoch*, 807 S.W.2d 156, 159 (Mo.App.1991). A defendant is not liable for interfering with a business expectancy if the interference is not independently wrongful. *Capobianco*, 812 S.W.2d at 860. "No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." *Forkin*, 835 S.W.2d at 503. For a corporate officer to be liable for tortious interference with a contract, he or she must act out of self interest and use improper means which are independently wrongful, notwithstanding any injury caused by the interference. *Meyer*, 807 S.W.2d at 159.

█ In support of their motion for summary judgment, the directors submitted affidavits and sworn testimony indicating that the directors had fired Hamilton and Downing for persuading Buchanan County Mutual policyholders to buy insurance from competing companies and that Hamilton and Downing had admitted "moving" some policies from Buchanan County Mutual to other companies. The affidavits said that the affiants had not engaged in, or were aware of, any conversations or discussions by any board members concerning any effort or intention to deprive Hamilton and Downing of their business or to divide their business among themselves; that the affiants did not engage in, or were aware of, any combination or conspiracy between or among board members to restrain Hamilton's and Downing's trade and commerce; that they did not desire to deny Hamilton and Downing of their livelihood or to cause them financial injury or destruction; that they had no malintent concerning Hamilton and Downing; that termination of agency agreements with Hamilton and Downing was in the company's best interests; and that the company had sent letters to policyholders advising them that Hamilton and Downing were no longer asso-

ciated with the company and that their policies had been assigned to other agents. For a year after firing them, Buchanan County Mutual paid Hamilton and Downing commissions for policy renewals.

The directors also relied on Hamilton's and Downing's agency agreements. Paragraph (7) of these agreements said, "This Agreement supersedes all previous agreements, whether oral or written, between the Company and Agent, and may be terminated by either party at any time by giving thirty (30) days written notice to the other."

In his deposition, one of the directors, James Whitson, said that he made the motion to terminate Hamilton's and Downing's agency agreements because he believed that Hamilton had attempted to "move" a Buchanan County Mutual policy to a competing company. He said that he believed that this was wrong for an agent who was also sitting on the board of directors and that taking policies away from the company harmed it.

The directors also relied on Hamilton's and Downing's deposition testimony. In his deposition, Hamilton admitted that he knew of no one who had ever indicated having knowledge that the directors conspired to restrain Hamilton's trade or commerce, that the directors desired to deny him of his livelihood or to injure him financially, that the directors wanted to reap financial benefit by denying him a business relationship with Buchanan County Mutual, that the directors said anything other than the truth, or that the directors had malice or ill will towards him. In his deposition, Downing acknowledged that before terminating his agency agreement, the directors had expressed concern that the Hamilton Downing agency was selling insurance for companies other than Buchanan County Mutual. He also admitted that he and Hamilton had advised the directors that they intended to continue selling other companies' property and casualty insurance; that he had no knowledge of any conversations or communications between Buchanan County Mutual directors concerning a conspiracy to restrain his trade or commerce; that he knew of no one who had expressed knowledge of any communications or conversations between the directors concerning a conspira-

cy to restrain his trade or commerce; and that he knew of no one who had knowledge that the directors were motivated by malice or had ill will towards him.

Hamilton and Downing claim that the directors acted out of self-interest, bad faith, and ill intent, rather than for Buchanan County Mutual's benefit. They claim that the directors wanted to disrupt or to destroy Hamilton's and Downing's business relationship with Buchanan County Mutual and their clients. They claim that the directors terminated their agency agreements to deprive them of their business and to divide their business among themselves. To support these claims, Hamilton and Downing submitted their own affidavits in which they said that they believed that their discharge resulted from the directors' desire to carve Buchanan County into exclusive sales territories. Indeed, in January 1988, the directors voted to divide the county's rural areas into "sales territories" in which only one agent could sell unless he or she granted written permission to others to do so. Hamilton and Downing asserted that this was an attempt to inhibit their ability to compete. We agree with the circuit court that this evidence failed to negate the directors' announced reason for firing Hamilton and Downing. The directors' establishment of sales territories does not raise an inference that the directors acted out of self-interest rather than for the company's benefit. Nor does it evidence "independently wrongful" activity.

Hamilton and Downing also noted that the directors did not hire new agents to replace them. The directors did wait three months before hiring new agents, but this does not support an inference that the directors acted improperly or out of self-interest.

Nor does the directors' sending notice to Buchanan County Mutual policyholders announcing that Hamilton and Downing were no longer company agents. The letters merely advised the policyholders that someone other than Hamilton or Downing would serve them in the future because Hamilton and Downing were no longer Buchanan County Mutual agents.

Hamilton and Downing also relied on the directors' reassigning Hamilton's and Downing's policies to other agents. This does not

support an inference that the directors were motivated by self-interest or ill will, either. Hamilton's and Downing's termination required that someone service the policies they had sold to maintain an orderly transition, and the directors waited two months after the terminations to reassign the policies. The directors paid Hamilton and Downing commissions on policy renewals for a year after their termination.

Also in support of their claim, Hamilton and Downing point to a March 3, 1989, letter from an attorney for Buchanan County Mutual. The attorney advised Hamilton and Downing of their fiduciary duties to Buchanan County Mutual and admonished them to do nothing which would conflict with the company's interests or would make use of the confidential information they acquired as directors. A director has a fiduciary duty to the corporation he or she serves. *Ramacciotti v. Joe Simpkins, Inc.,* 427 S.W.2d 425, 431 (Mo.1968). Again, we fail, as the circuit court apparently did, to understand how this shows that the directors conspired against Hamilton and Downing or attempted to restrain their trade.

Hamilton and Downing then point to a policyholder's letter notifying Buchanan County Mutual that she was cancelling her policy. She explained in the letter that she was cancelling the policy because her "present agent is not 'out of business' as was reported by [one of the directors]." They suggest that this letter shows that the directors were falsely telling Buchanan County Mutual policyholders that they were "out of business." Buchanan County Mutual responded to the policyholder's letter by explaining that the director had assured the company that he did not tell the policyholder that Downing was "out of business" but told her that Downing was no longer a Buchanan County Mutual agent. This letter does not establish that the directors acted out of self-interest in terminating Hamilton's and Downing's agency agreements or that the directors interfered with their business relations.

Hamilton and Downing finally claim that the directors' meeting with Grinnell Mutual Insurance Company, Buchanan County Mutual's major reinsurer, was evidence of the directors' wrongful conduct. The directors

met with Grinnell Mutual representatives in June 1989 and discussed, among other things, Buchanan County Mutual's losses after terminating Hamilton's and Downing's agency agreements. They also discussed Buchanan County Mutual's advertising decisions involving Grinnell Mutual. Again, we fail to understand how this established that the directors acted out of self-interest in firing Hamilton and Downing or that they interfered with their business relations. It does not establish much more than that the company suffered losses after firing them and was concerned about them.

## Civil Conspiracy

Hamilton and Downing also contend that the circuit court erred in sustaining the directors' motion for summary judgment concerning their civil conspiracy claim. Hamilton and Downing claimed that the directors' terminating their agency agreements was unjustified and wrongful and that the directors acted in concert to usurp Hamilton's and Downing's business relationship with Buchanan County Mutual and with their clients, to restrain them in their trade and ability to compete with respondents, and to improperly obtain clients and commissions which should have gone to them.

■ "A civil conspiracy is an agreement between at least two persons to do an unlawful act, or to use unlawful means to do an act which is lawful." *Blaine v. J.E. Jones Construction Co.*, 841 S.W.2d 703, 713 (Mo.App. 1992). Civil conspiracy is not itself actionable in the absence of an underlying wrongful act or tort. *Williams v. Mercantile Bank of St. Louis*, 845 S.W.2d 78, 85 (Mo.App. 1993). "[T]he conspirators [must have] a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 290 (Mo. App.1983). Civil conspiracy must be supported by clear and convincing proof that the alleged conspirators "knowingly performed any act or took any action to further or carry out the unlawful purposes of the conspiracy." *Id.*

■ The evidence does not show that the directors conspired against Hamilton and Downing. The directors terminated Hamilton's and Downing's agency agreements because of a concern that the appellants' were "moving" Buchanan County Mutual business to competing companies. Termination of the agency agreements was not unlawful because the agreements were terminable at will with or without cause with 30 days' written notice. The evidence does not show that any unlawful activity occurred which would support a civil conspiracy claim.

## Antitrust

Hamilton and Downing also contend that the trial court erred in sustaining the directors' motion for summary judgment concerning Hamilton's and Downing's antitrust claim. Hamilton and Downing alleged that the directors' conduct constituted a combination or conspiracy in restraint of trade in violation of § 416.031, RSMo.1994, Missouri's antitrust law.

■ Standing to sue for an antitrust claim is limited to a consumer or competitor that suffers antitrust injury. *General Industries Corporation v. Hartz Mountain Corporation*, 810 F.2d 795, 809 (8th Cir.1987).[3] In *Hartz*, the United States Court of Appeals for the Eighth Circuit ruled that a plaintiff who was not a consumer of goods or an injured competitor lacked standing to bring an antitrust claim because the plaintiff did not buy and sell the Hartz products. Instead, the plaintiff earned commissions by promoting direct sales to retailers of certain products which Hartz marketed only through brokers. *Id.* See also *S.D. Collectibles, Inc. v. Plough, Inc.*, 952 F.2d 211, 213 (8th Cir. 1991).

In this case, Hamilton and Downing were not consumers of Buchanan County Mutual's insurance products. They earned commissions as sales agents.

■ Hamilton and Downing assert that they were competitors of the directors because, although they all sold insurance for

---

**3.** Section 416.141 requires that Missouri's antitrust laws be construed "in harmony with ruling judicial interpretations of comparable federal antitrust statutes." *Stensto v. Sunset Memorial* *Park, Inc.*, 759 S.W.2d 261, 266 (Mo.App.1988). Section 416.031.1 closely parallels 15 U.S.C. § 1, the Sherman Act.

Buchanan County Mutual, they still competed for customers. Even assuming this to be true, the evidence does not show that the directors conspired against Hamilton and Downing or engaged in any illegal conduct.

### Due Process

Finally, the appellants claim that Rule 74.04 concerning summary judgments is unconstitutional as a violation of their due process rights under the Missouri Constitution. They assert that it constitutes an interference with the right to a jury trial in violation of Article I, § 22(a), and violates the restrictions on the Missouri Supreme Court's rule-making authority under Article V, § 5.

■ "[A] summary judgment entered on a properly plead and supported motion does not deny due process." *ITT*, 854 S.W.2d at 378. Summary judgment was proper in this case. Accordingly, we discern no constitutional violation.

LOWENSTEIN, P.J., and HANNA, J., concur.