Dwane Allen WILLS, II, et al., Appellants,

v.

Julie R. WHITLOCK, et al., Respondents.

No. WD 62943.

Missouri Court of Appeals, Western District.

Aug. 3, 2004.

---

**3.** U.S. Const. amend. VI; Mo. Const. art. I, § 18(a).

644

James A. Kessinger, Kansas City, MO, for appellants.

William J. Daily, Glasgow, MO, for respondents.

Weldon W. Perry, Jr., Lexington, MO, for respondent Whitlock.

Before JOSEPH M. ELLIS, C.J., PATRICIA BRECKENRIDGE, and THOMAS H. NEWTON, JJ.

JOSEPH M. ELLIS, Chief Judge.

Appellants, Dwane A. Wills II ("Wills") and Wills Professional Services, Inc. ("WPS"), appeal the grant of summary judgment to respondents, Julie R. Whitlock ("Whitlock," formerly Julie R. Wills), Scott and Julie Fuemmeler ("the Fuemmelers"), and Audsley Monument Company, LLC ("AMC"), on their actions against one or more of the respondents to enforce collateral restrictions on the sale of a private cemetery contained in a contract executed by Whitlock, and for *prima facie* tort. The Circuit Court of Saline County entered summary judgment against Wills and WPS on all but one of the nine claims asserted in their second amended petition, and certified its judgments as final for purposes of immediate appellate review pursuant to Rule 74.01(b), expressly determining that there was "no just reason for delay with respect thereto." In this appeal, Wills and WPS claim the circuit court erred in entering summary judgment against them because genuine issues of material fact remain in dispute and respondents were not entitled to judgment as a matter of law, in that appellants pleaded one or more viable causes of action against respondents. We reverse the trial court's grant of summary judgment to respondents and remand for a trial on the merits of the petition.

### Standard of Review

The standard of review governing this case was aptly summarized in *Butler v. Burlington Northern & Santa Fe Railway Co.*, 119 S.W.3d 620 (Mo.App. W.D.2003):

> A movant is entitled to summary judgment if the motion for summary judgment and the response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We view the record in the light most favorable to the party against whom summary judgment is entered and accord the non-movant the benefit of all reasonable inferences from the record. We take as true the facts set forth by affidavit or otherwise in support of the moving party's motion unless they are contradicted by the nonmoving party's response to the summary judgment motion. The non-moving party's response must show the existence of some genuine dispute as to one of the material facts necessary to the plaintiff's right to recover.

*Id.* at 621–22 (quoting *Peck v. Alliance Gen. Ins. Co.*, 998 S.W.2d 71, 74 (Mo. App. E.D.1999)). Furthermore, as stated by the Missouri Supreme Court in *Harjoe v. Herz Financial*, 108 S.W.3d 653, 654 (Mo. banc 2003): "Review is de novo. Because the trial court makes its decision based upon the record submitted and the law, this Court need not defer to the order of the trial court granting summary judgment." "To succeed on summary judgment, a defendant must show: (1) undisputed facts negating any of plaintiffs' required elements; (2) the plaintiffs, after adequate time for discovery, cannot produce evidence sufficient to find one of plaintiffs' required elements; or (3) there is no genuine dispute as to each fact necessary to support a properly-pleaded affirmative defense." *Chouteau Auto Mart, Inc. v. First Bank of Mo.*, 55 S.W.3d 358, 360 (Mo. banc 2001) (emphasis omitted).

### Facts, Background, and Procedural History of the Case

■ Viewed in the light most favorable to Wills and WPS, the record reflects the following. On December 11, 1997, after protracted, expensive, and bitter divorce litigation which took place over a period of several years, the Circuit Court of Saline County entered a judgment dissolving the marriage of Wills and Whitlock, who had executed, earlier the same day, a privately-negotiated Separation and Property Settlement Agreement ("Separation Agreement"). Part of the Separation Agreement, which the circuit court expressly incorporated into its judgment of dissolution "by reference as though fully set forth herein," was a document titled Contract and Agreement ("Contract"). Among other things, the Contract (which was executed on or about December 9, 1997 by Wills, WPS, Whitlock, and another party not involved in this appeal) required Wills and WPS to convey to Whitlock, by quitclaim deed, all their interest in certain real property—namely, a fifteen-acre tract of land known as the Sunset Memorial Gardens Cemetery ("Cemetery") located in Marshall, Saline County, Missouri.[1] The Contract further provided that "[u]ntil December 9, 2000, [Whitlock] shall not directly or indirectly sell this real property to any person, directly or indirectly, competing

with [Wills] or [WPS],[2] or any successor or assignor. Further, [Whitlock] will not compete, directly or indirectly, by operation of [Cemetery] with [Wills or WPS]. Operation of the cemetery, alone, shall not be competition with [Wills or WPS]." Whitlock further agreed that:

> Should [she] receive an offer to buy or make an offer to sell [Cemetery], [Wills] or [WPS] shall be given forty-five days written notice of the proposed sale and the terms thereof and a first option to purchase [Cemetery] on the same terms and conditions as such proposed sale, with a five (5) percent increase in the purchase price, such purchase by [Wills] and [WPS] to close within forty-five business days after receipt of written notice as herein provided.[3]

Moreover, the parties to the Contract agreed that these "provisions may be enforced by a court of equity, by injunction or as otherwise provided by law." Finally, the parties all expressly waived their rights to trial by jury "with regard to any disputes arising under" either the Contract or the Separation Agreement.[4]

In performance of their obligations under the Contract, on February 23, 1998, Wills and WPS executed a quitclaim deed, which was prepared by one of Whitlock's divorce attorneys, transferring their ownership interest in the Cemetery to Whit-

---

1. In consideration for this conveyance, Wills and WPS were to receive a $35,000 credit toward a certain debt owed by them to Russell Whitlock, a third party related to Julie Whitlock.

2. Wills is a licensed funeral director and embalmer who works at a funeral home located in Marshall, Saline County, Missouri, and owned by WPS. Wills is also the sole shareholder, director, and officer of WPS, a Missouri corporation whose primary business function is the ownership and operation of that funeral home.

3. The right of "first option to purchase" contained in the Contract is often referred to as a "right of first refusal" or a "preemptive right." *See Lake Cable, Inc. v. Trittler*, 914 S.W.2d 431, 434–35 (Mo.App. E.D.1996). We further note that the right of first refusal granted in the Contract is not limited to the three-year period during which Whitlock was prohibited from directly or indirectly selling the Cemetery to a direct or indirect competitor of Wills or WPS.

4. The right to a jury trial may be waived by contract. *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 627 (Mo. banc 1997).

lock. The deed, which was recorded on March 19, 1998, contained none of the restrictions on direct or indirect sale to a competitor that were set forth in the Contract, nor any language regarding a right of first refusal. Less than two weeks later (March 30, 1998), Whitlock entered into a contract to sell the Cemetery to the Fuemmelers[5] for the sum of $55,000.00.[6] By certified letter dated the same day, Whitlock notified Wills of the proposed sale as follows: "This is notice per addendum that a contract has been signed and accepted by me on [Cemetery]. According to our agreement this is your legal 45 day notice of first option to purchase property per the addendum. The sales price exceeded at 5% would be $57,750.00 with 2,000 earnest money down." This letter, which did not identify the buyers and, therefore, did not allow appellants to determine if they were direct or indirect competitors of theirs, was received by Wills on March 31, 1998. Upon subsequent independent investigation by appellants, within a week or so they discovered that the buyers were the Fuemmelers. Later, Wills notified Whitlock of his objections to the proposed sale.

After receiving notice of the pending sale of the Cemetery, independently discovering the identity of the buyers, and notifying Whitlock of their objections to the proposed sale, appellants did not exercise their Contractual right of first refusal within the forty-five business day window specified in the Contract. Instead, on May 25, 1998, they filed a petition in the Circuit Court of Saline County seeking, among other forms of both equitable and legal relief, the issuance of an injunction preventing the proposed sale to a competitor based on the restrictions contained in the Contract. Shortly thereafter, appellants also filed a notice of lis pendens. Upon learning of the May 25, 1998 lawsuit and accompanying notice of lis pendens, the title company which was to have been involved in the sale, which was scheduled to close on June 2, 1998, refused to issue title insurance on the property. By May 28, 1998, respondents all knew that the title company had refused to issue a title insurance policy on the Cemetery "because Dwane had filed" either the May 25, 1998 lawsuit, the notice of lis pendens, or both.

**5.** Scott Fuemmeler is a licensed funeral director who works for a different Saline County funeral home and has assisted at funerals for yet another funeral home in Saline County. AMC, a Missouri limited liability company which is wholly owned and controlled by Scott and his wife Stephanie and has a business location in Marshall, sells grave monuments for use in the Cemetery, and has increased its net worth thereby. Wills and WPS also sell grave monuments for use in the Cemetery. Thus, they all sell the same products and provide the same services in the same geographical area and even the same cemetery. Despite these uncontroverted facts, which were set forth by appellants in opposition to Whitlock's motion for summary judgment and elsewhere and were never denied or contradicted by any of the respondents, as well as those set forth in note 2 *supra*, in their brief, the Fuemmelers and AMC nevertheless staunchly maintain they are neither direct nor indirect competitors

with Wills or WPS as contemplated in the Contract. Since the Fuemmelers and AMC provide no factual or legal basis for this contention, it suffices to say that for summary judgment purposes they clearly are.

**6.** On that date, the Fuemmelers were at least partially aware of the terms of the Contract between appellants and Whitlock, as the contract for sale of the Cemetery to them by Whitlock expressly provided: "Contract contingent upon first refusal right to be presented to Dwane Wills per addendum in divorce decree between Julie Whitlock and Dwane Wills." The record further shows that as of the date the Fuemmelers signed the March 30, 1998 contract of sale, Whitlock had not informed them of the Contractual provision prohibiting her from selling the Cemetery to direct or indirect competitors of Wills or WPS.

Whitlock did not tell either of the Fuemmelers why appellants had objected to the proposed sale.

Around March or April 1998, after seeking out and initiating contact with the holder of a negotiable promissory note and deed of trust securing a Nevada, Vernon County, Missouri, funeral home owned by appellants, Whitlock purchased the note. In May 1998, Whitlock foreclosed on the mortgage and forced the sale of the funeral home in June 1998.

■ On August 28, 1998, while appellants' May 25, 1998 lawsuit was still pending and three months after the proposed sale had died on the vine due to Whitlock's failure to obtain title insurance, Whitlock signed and delivered a quitclaim deed conveying her ownership interest in the Cemetery to the Fuemmelers.[7] The Fuemmelers then immediately took possession of and began operating the Cemetery. The August 28, 1998 quitclaim deed, which was recorded the very same day, recited that Whitlock,

> in consideration of the sum of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION, to her paid by the Grantees [the Fuemmelers] (the receipt of which is hereby acknowledged), does by these presents REMISE, RELEASE, AND FOREVER QUIT CLAIM unto the [Fuemmelers] the following described lots, tracts or parcels of land, being and situate in the County of Saline, and State of Missouri, to wit: [the Cemetery].

In addition to similar deposition testimony we need not recount here, the record contains sworn affidavits signed by Whitlock and the Fuemmelers, dated February 17 and 18, 2003, stating that the Cemetery was "gifted" to the Fuemmelers by Whitlock without Whitlock receiving or expecting to receive "payment or compensation of any kind whatsoever" from the Fuemmelers, either at the time of the "gift" or in the future. The record also contains a sworn August 26, 2002 affidavit signed by another former husband of Whitlock's, Merle Minkler ("the Minkler affidavit"), which states that Minkler "had a conversation with Julie Whitlock in which she told [him] that she had an agreement with Scott Fuemmeler that Fuemmeler would pay her for the Sunset Memorial Gardens Cemetery after Dwane Wills' lawsuit was resolved."[8]

On or about October 13, 1999, appellants voluntarily dismissed, without prejudice, their May 25, 1998 lawsuit against respondents. Approximately six months later (April 25, 2000), they filed the action *sub judice*. On May 7, 2003, the circuit court entered summary judgment against appellants on Counts I through VII of their nine-count second amended petition,[9] find-

---

**7.** Whitlock did not provide appellants with any notice, Contractual or otherwise, of the terms of this transaction before or after its completion. This transaction was performed after Whitlock had conferred with her attorneys.

**8.** In their brief, appellants note that the February 17 and 18, 2003 affidavits filed by respondents are at best self-serving. While this may be true, neither the circuit court nor this court is authorized to determine the weight or credibility of statements or testimony made under oath and offered in support of or in response to a motion for summary judgment.

*Payne v. City of Osage Beach,* 132 S.W.3d 314, 317 (Mo.App. S.D.2004).

**9.** Respectively, Counts I through VII pleaded facts alleging that appellants were entitled to relief against one or more of the respondents on the following theories: specific performance, injunction, declaratory judgment, breach of contract, civil contempt of court, tortious interference with contract, and civil conspiracy. In Counts I, II, III, VI, and VII, appellants sought remedies against the Fuemmelers and AMC, while appellants sought relief against Whitlock on all seven counts. The circuit court denied Whitlock's motion for

ing that they were all barred as a matter of law since the Contractual provisions prohibiting Whitlock from directly or indirectly selling the Cemetery to a competitor and providing for a right of first refusal were merged into and did not survive the February 23, 1998 quitclaim deed from appellants to Whitlock. On June 12, 2003, the circuit court also entered summary judgment against appellants on Count IX of the petition (which alleged that Whitlock had committed one or more *prima facie* torts), finding that since other, more traditional tort causes of action were available, Count IX did not state a claim upon which relief could be granted.[10] This appeal followed.

### Analysis

### I.

■ In their first point, appellants argue that the circuit court erred in entering summary judgment against them on Counts I through VII of their second amended petition because the Contractual

restrictions prohibiting sale of the Cemetery to a competitor and providing for a right of first refusal should it later be sold to any party were not merged into the February 23, 1998 quitclaim deed from appellants to Whitlock, in that those provisions were collateral matters which survived the deed.

The circuit court ruled that because the February 23, 1998 quitclaim deed from appellants to Whitlock contained no language prohibiting her from subsequently directly or indirectly selling the Cemetery to appellants' business competitors, the deed's execution and acceptance "resulted in a full, complete and effectual transfer of all [appellants'] right, title, interest and claims to the Cemetery premises and property" to Whitlock, who, *ex legibus,* was also no longer bound by the terms of the Contract prohibiting such a sale on her part. In their briefs, respondents contend that this ruling was correct since the obligations of the Contract were discharged by and merged into the quitclaim deed exe-

---

summary judgment on Count VIII (defamation), which remains pending against her alone. Count VIII involved allegations that Whitlock had taken out a classified advertisement in a local (Marshall, Missouri) newspaper suggesting that Wills had abused Whitlock during their marriage, and that Whitlock had created and publicly displayed "wanted" posters bearing the caption "spouse abuser," which contained Wills' name, photograph, and address and suggested that Wills had physically abused, sexually assaulted, stalked, and harassed Whitlock.

**10.** Although the circuit court denominated this judgment as a dismissal with prejudice, the court further stated that the dismissal was "entered in part for the reasons and grounds previously recited in the Court's Summary Judgment of May 7, 2003 with respect to other claims heretofore asserted in Counts I through VII of the Second Amended Petition, insofar as they involve the circumstances of defendant Whitlock's transfer of the [Cemetery], and the other issues related thereto."

Furthermore, the circuit court's June 12, 2003 judgment dismissing Count IX with prejudice also expressly referred to and considered matters outside the pleadings in this case—namely, a copy of the complaint filed by different counsel for appellants in a separate federal civil lawsuit (since dismissed by appellants) against different defendants and involving entirely different claims, which had been introduced as an exhibit by counsel for Whitlock. Alone or together, these acts were more than sufficient to transform the circuit court's June 12, 2003 judgment from a dismissal of Count IX with prejudice to an entry of summary judgment on Count IX. *See* Rule 55.27(a); *Geary v. Mo. State Employees' Ret. Sys.,* 878 S.W.2d 918, 921 (Mo.App. W.D. 1994); *Logan v. Hyatt Legal Plans,* 874 S.W.2d 548, 550 (Mo.App. W.D.1994); *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 499 (Mo. banc 1991). Accordingly, we review both of the circuit court's judgments under the summary judgment standard of review.

cuted by appellants and accepted by respondents. We disagree, as the common law doctrine of merger by deed is patently inapplicable to this case.

The doctrine of merger is a creature of policy derived by the courts from the ancient rule of *caveat emptor*. *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 n. 3 (Mo. banc 1978). Under this doctrine, when a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract becomes *functus officio*[11] and the rights of the parties rest thereafter solely on the deed. *Artman v. O'Brien*, 398 S.W.2d 24, 27 (Mo.App. E.D.1965). In other words, the terms of the contract of sale are merged into the deed, "so that the obligations of the sale contract are extinguished when the deed is delivered." *Smith v. Old Warson Dev. Co.*, 479 S.W.2d 795, 800 (Mo. banc 1972).

However, there are several exceptions to the merger doctrine, including fraud, accident, or mistake. *Estate of Kielhafner*, 639 S.W.2d 115, 117 (Mo.App. E.D.1982). Furthermore, "contractual provisions as to consideration to be paid by the purchaser are ordinarily not merged in the deed." *Don King Equip. Co. v. Double D Tractor Parts*, 115 S.W.3d 363, 374 (Mo.App. S.D.2003) (internal quotation marks omitted). Moreover, collateral matters ancillary to the transfer are also excluded from operation of the merger doctrine:

The essence of that doctrine is that when a vendor offers a deed and the vendee accepts, that generally constitutes a new agreement as to the form and contents of the deed which supersedes any contrary previous agreement. By reason of that underlying rationale, the doctrine is basically confined to the sufficiency of the deed itself and does not touch other aspects of the original sales agreement. Those latter aspects are generally referred to in the cases as 'collateral matters' which are not affected by the doctrine of merger.

*Hutchens Bros., Inc. v. Brownsberger*, 624 S.W.2d 538, 540 (Mo.App. W.D.1981). Among such collateral matters are contractual obligations relating to the performance of acts in the future, *Don King Equip. Co.*, 115 S.W.3d at 374, and express contractual provisions holding open a condition, *Kielhafner*, 639 S.W.2d at 117, whether the contemplated future performance is due from the vendor or the vendee. *Hutchens Bros.*, 624 S.W.2d at 540–41. Accordingly, this court has held that "[w]here there are items of agreement outside of and beyond the conveyance itself, particularly with respect to obligations which are to be performed at a time subsequent to the date of the deed, there can be no merger so as to cut off the future obligation." *Id.* at 540.

Applying the foregoing principles to the case at bar, there clearly was no merger which could operate to extinguish Whitlock's Contractual obligation to refrain from directly or indirectly selling the Cemetery to any of the direct or indirect business competitors of Wills or WPS during the future three-year period set forth

---

**11.** Translated literally, the Latin term *functus officio* means "Having discharged his duty." 27 C.J. *Functus Officio* at 926 (1922). It may be applied to describe anything which, after having fulfilled or accomplished the purpose of its creation, is now of no further virtue or effect. *State ex rel. Jones v. Atterbury*, 300 S.W.2d 806, 811 (Mo. banc 1957). " 'The term is applied to something which once has had life and power, but which has become of no virtue whatsoever[.]' " *Id.* (*quoting* 37 C.J.S. *Functus Officio* at 1401 (1943)). *See also Galaxy Steel & Tube, Inc. v. Douglass Coal & Wrecking, Inc.*, 928 S.W.2d 420, 423 n. 4 (Mo.App. S.D.1996).

in the Contract. The same is true of appellants' Contractual right of first refusal upon Whitlock's proposed sale of the Cemetery to any party, as they are both obviously aspects of the transaction which were outside of and beyond the original conveyance itself and collateral thereto:

> [T]he execution and delivery of the deed to the land was only an act preliminary to the fulfillment of the contract, and the deed had to be given before the other covenants pursuant to the terms of the contract could be performed. ... [Thus] no presumption arises that the acceptance of the deed was an execution of the whole contract. In fact, as shown by the record, the contract contained other covenants, the performance of which could not be executed by acceptance of the deed.

*Tighe v. Locke*, 299 S.W. 105, 108 (Mo.App. W.D.1926). "The fact that appellant executed the deed and thereby conveyed his right, title, and interest pursuant to the terms of the separation agreement cannot be interpreted as a decision to relieve respondent of her responsibility under the terms of the separation agreement." *Hazlett v. Clark*, 652 S.W.2d 135, 137 (Mo. App. W.D.1983).

In *Wilson v. Wilson*, 115 Mo.App. 641, 92 S.W. 145 (W.D.1906), this court firmly rejected a litigant's attempt to invoke the merger doctrine to relieve himself of a bothersome collateral contractual obligation as follows:

> [W]hen, as in this case, the executory contract embraces other agreements, undertakings and obligations in addition to those relating to the conveyance of real estate and imposes upon both parties the duty of performing executory acts, the contract should not be classified with those exclusively pertaining to the conveyance of real estate, and the delivery of a deed made pursuant to the terms of such contract is the execution of but one of several executory acts of equal dignity, and therefore cannot in any way affect the vitality of the original contract because it does not purport to deal with the entire subject-matter, but only with a part thereof. The deed may contain covenants and agreements that change or abrogate those of the executory contract, but in the absence of such special provision the contract is unaffected by the principle of merger and remains unimpaired.

> \* \* \*

> It would be a perversion of the doctrine of merger, and require an interpretation thereof not sustained by any of the authorities, to which we have been cited, to hold it applicable in this case.

*Id.* at 147. Though decided nearly a century ago, this court's decision in *Wilson* applies with equal force today. As in *Wilson*, on the facts of this case, it would constitute a manifest injustice and be contrary to extensive case law to hold that the policy-based common law doctrine of merger by deed operated to release Whitlock from her various executory Contractual obligations. Accordingly, the circuit court's sole stated legal rationale for entering summary judgment against appellants on Counts I through VII of their second amended petition was patently erroneous.

## II.

While this would normally conclude our analysis of appellants' first point relied on, in their briefs, respondents also present a number of alternative legal theories, which, they contend, are adequate to sustain the circuit court's grant of summary judgment in their favor on Counts I through VII of appellants' second amended petition. Since "we are to affirm the trial court's grant of summary judgment for the

respondent if the same is correct under any theory supported by the record developed below and presented on appeal," *Victory Hills Ltd. P'ship I v. NationsBank, N.A.*, 28 S.W.3d 322, 327 (Mo.App. W.D. 2000), we must address those additional theories.[12]

■ First, citing *Hendricks v. Northcutt*, 820 S.W.2d 689, 692 (Mo.App. S.D. 1991), and *Peet v. Randolph*, 33 S.W.3d 614, 619 (Mo.App. E.D.2000), respondents argue that in as much as the summary judgment record establishes that there is no genuine dispute as to each fact necessary to support their entitlement to summary judgment on their affirmative defense that the August 28, 1998 conveyance of the Cemetery from Whitlock to the Fuemmelers was a "gift" rather than a "sale," the transfer was not subject to the Contractual restriction on direct or indirect sale of the property to a direct or indirect business competitor of appellants and summary judgment was proper. We disagree.

■ This case involves a gift *inter vivos*, which our Supreme Court has defined as "a voluntary transfer of property by the owner to another, without any consideration or compensation as an incentive or motive for the transaction." *Pilkington v. Wheat*, 330 Mo. 767, 51 S.W.2d 42, 44 (1932). The essential elements for a valid *inter vivos* gift of real property are: (1) a present intention to make a gift to the grantee on the part of the grantor; (2) the grantor's execution of and delivery to the grantee of a deed or other proper written instrument evidencing the gift; and (3) acceptance of the deed or instrument by the grantee. *Deck v. Deck*, 64 S.W.3d 870, 874 (Mo.App. E.D.2002).[13] The party claiming that an *inter vivos* gift has been made (in this case, the respondents) bears the burden of proving these three required elements by clear and convincing evidence. *In re Estate of Passman*, 537 S.W.2d 380, 384 (Mo. banc 1976). The trier of fact determines whether a valid gift *inter vivos* exists. *Id.* at 383.

■ We turn now to the question of intent, which, in *Edie v. Coleman*, 235 Mo.App. 1289, 141 S.W.2d 238 (W.D.1940), this court discussed in a general sense as follows:

> The matter of intention is seldom, if ever, capable of direct or positive proof, but is arrived at by such just and reasonable deductions from the acts and facts proven. Intent is an emotion or operation of the mind, and can usually be shown only by acts, declarations, and circumstances known to the party charged with the intent. The intent of a person cannot be proven by direct and positive evidence. It is a question of fact, to be proven, like any other fact, by acts, conduct, and circumstances. The intent with which an act is done denotes

---

12. To be more technically precise, "[a]n order of summary judgment will not be set aside on review if supportable on any theory. The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions." *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995) (internal citation omitted).

13. Appellants point out that in their second amended petition, they specifically alleged that at the time of the transfer, Whitlock lacked the mental capacity necessary to form the requisite intent to validly convey the Cemetery (whether by sale or gift *inter vivos*) to the Fuemmelers due to a cycle of extreme alcohol dependency and other mental disorders, which had resulted in her mental incapacitation and her involuntary civil commitment to a psychiatric facility. In light of our ultimate disposition of this case, we need not address the issue of Whitlock's mental capacity.

a state of the mind, and it can be proved only from expressions, or conduct, or both, considered in the light of the given circumstances.

*Id.* at 245 (internal citations, quotation marks, and paragraph style omitted). Accordingly, our Supreme Court has held that whether a purported donor has the requisite donative intent to make a valid gift is a question of fact, which is to be determined "under all the facts and circumstances connected with the transaction." *Lewis v. Lewis,* 354 Mo. 415, 189 S.W.2d 557, 560 (1945). Thus, a purported donor's "[c]onduct is an enlightening ingredient in discerning" his or her donative intent. *In re Estate of Hoffman,* 490 S.W.2d 98, 103 (Mo.1973).

For all these reasons, this court has observed that summary judgment "is rarely appropriate in cases involving proof of such elusive facts as intent, motive, fraud, duress, undue influence, mental capacity, and the like—which must in nearly every case be proved by circumstantial evidence." *Estate of Heidt,* 785 S.W.2d 668, 670 (Mo.App. W.D.1990). Indeed, "[i]t has been consistently held that cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment." *Ganaway v. Shelter Mut. Ins. Co.,* 795 S.W.2d 554, 562 (Mo.App. S.D. 1990).

Respondents nevertheless maintain that on this record, there is no genuine dispute as to each fact necessary to support their affirmative defense of gift *as a matter of law.* We disagree, as this would require a finding of donative intent on the part of Whitlock, a subjective and often elusive issue of fact which must be established by clear and convincing evidence, and is particularly inappropriate for determination through the summary judgment process. That is to say, the conduct, acts, and words of the parties to the purported "gift" transaction prior to its consummation and the circumstances surrounding that transaction are sufficient to raise a triable issue of fact on the issue of Whitlock's donative intent, particularly in light of the fact that respondents bore the burden of proving such intent by clear and convincing evidence.

"When determining whether summary judgment is proper, the evidence and all reasonable inferences are to be viewed in the light most favorable to the non-moving party." *United Mo. Bank, N.A. v. City of Grandview,* 105 S.W.3d 890, 898 (Mo.App. W.D.2003). "[T]he rule that the non-movant is 'given the benefit of all reasonable inferences' means that if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. banc 1993). Whether a particular inference drawn from a given state of facts is reasonable is a question of law. *Hoock v. S.S. Kresge Co.,* 230 S.W.2d 758, 760 (Mo. banc 1950); *Tharp v. Monsees,* 327 S.W.2d 889, 899 (Mo. banc 1959). "[I]f the record contains competent evidence that two plausible, but contradictory accounts of essential facts exist, then a genuine issue of material fact remains to be resolved, because fair minded people, exercising reasonable judgment could reach different conclusions on the issue in controversy." *Larison v. Pub. Water Supply Dist. # 1,* 998 S.W.2d 192, 196 (Mo. App. W.D.1999). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous. Where the 'genuine issues' raised by the non-movant are merely argumentative, imaginary or

frivolous, summary judgment is proper." *ITT*, 854 S.W.2d at 382. Thus, "disputes over facts that might affect the outcome of a suit under governing law preclude the entry of summary judgment. The determination of such contradictory facts is for the fact finder at a complete trial." *Payne*, 132 S.W.3d at 317 (internal citations omitted).

In this case, the general sequence of events recounted *supra* is itself suggestive that there was no actual gift. In addition, however, there are several other notable circumstances. The first is the remarkable rapidity with which the August 28, 1998 quitclaim deed conveying the Cemetery to the Fuemmelers was filed for record. The deed was recorded with the Saline County Recorder of Deeds at 11:54 a.m. that day, which was *at most* only a few minutes or hours after it had been signed by Whitlock. Under similar circumstances, our Supreme Court has held that such unusual haste in recordation, "standing unexplained upon the record, as it does, gives rise to the inference that defendant had little confidence in the regularity and good faith of the transaction." *Vining v. Ramage*, 319 Mo. 65, 3 S.W.2d 712, 720 (1928). Similarly, in *Gruetzmacher v. Hainey*, 373 S.W.2d 45, 53 (Mo.1963), the Court stated that an "unseemly haste to place the deed on record may well signify doubts about the efficacy of the transaction."

The second circumstance is that the August 28, 1998 quitclaim deed nowhere states that the conveyance was intended to be an *inter vivos* gift. To the contrary, it recites that, in exchange for the Cemetery, Whitlock expressly acknowledged her receipt of "the sum of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION" from the Fuemmelers. In a case involving similar facts and almost identical deed language, the Missouri Supreme Court noted that if the deed "was intended as a donation, it fails to develop that fact" inasmuch as it recited "one dollar and other consideration in hand paid and receipt acknowledged, but fails to mention as such love and affection, or to suggest that it was gift." *Wilkerson v. Wann*, 322 Mo. 842, 16 S.W.2d 72, 75 (1929).[14] The Court went on to say that the language of the deed actually "tended to disprove the theory of gift" advanced by the defendant, *id.*, further observing: "[I]n writing the deed, defendant failed to insert therein the understandings. It may be inferred then, if such was the understanding, that plaintiff would have noticed the absence thereof in the deed. *The fact that the deed did not recite in substance the complete understanding of the parties tends to disprove the intention to make a donation.*" *Id.* at 76 (emphasis added).[15]

While respondents were free to (and did) introduce parol evidence into the summary judgment record to contradict the language of the deed as to consideration in an attempt to support their theory of gift, the fact remains that the record contains

---

14. It is important to keep in mind that a gift is defined as "a voluntary and gratuitous assignment of something by one without compensation to another who takes it *without valuable consideration*." *Hull v. Hull*, 591 S.W.2d 376, 380 (Mo.App. W.D.1979) (emphasis added).

15. *Aldridge v. Aldridge*, 202 Mo. 565, 101 S.W. 42 (1907), relied on by respondents, is inapposite and does not hold to the contrary. Even if it did, we would have to treat it as having been overruled *sub silencio* by *Wilkerson* and the even later case of *Sebree v. Rosen*, 349 S.W.2d 865 (Mo.1961), which applied *Wilkerson* in holding that a deed which recited that the real estate was conveyed "for and in consideration of the sum of One Dollar and other valuable consideration," paid and receipt acknowledged, tended to "disprove the theory of a gift, or a consideration based upon love and affection." *Id.* at 883.

competent evidence that two plausible, but contradictory accounts of essential facts exist. Accordingly, summary judgment on the issue of Whitlock's donative intent would be improper.[16]

Finally, there is also the Minkler affidavit, which as noted *supra*, states that he "had a conversation with Julie Whitlock in which she told [him] that she had an agreement with Scott Fuemmeler that Fuemmeler would pay her for the Sunset Memorial Gardens Cemetery after Dwane Wills' lawsuit was resolved." While the affidavit is not a model of clarity (for example, it does not say *when* Minkler had this conversation with Whitlock), viewing the summary judgment record and the surrounding circumstances in the light most favorable to appellants, the affidavit makes it quite clear that genuine issues of material fact remain to be resolved—namely, whether Whitlock had the required donative intent to make and did make a valid *inter vivos* gift of the Cemetery to the Fuemmelers, or whether it was actually a disguised indirect sale, which was to be consummated after this litigation had concluded in respondents' favor.

For all these reasons, we reject respondents' argument that they were entitled to summary judgment on the alternative ground that, as a matter of law on this summary judgment record, Whitlock gifted the Cemetery to the Fuemmelers.

## III.

■ The Fuemmelers and AMC further argue that they were entitled to summary judgment on all counts applicable to them (*i.e.*, Counts I, II, III, VI, and VII of the second amended petition) because appellants failed to exercise their Contractual right of first refusal within forty-five business days of receiving notice of the proposed sale on March 31, 1998. As correctly noted by appellants in their brief, the essence of the Fuemmelers' argument is that once Whitlock accepted *any offer* to sell the Cemetery, *including one from a business competitor of appellants*, appellants were required to timely exercise their Contractual right of first refusal or Whitlock could legally sell the real estate to such a competitor, even within the three-year period specified in the Contract.

This argument is nonsensical, and if accepted, would be contrary to the plain intent, meaning, and effect of the Contract. As the Fuemmelers and AMC were business competitors of appellants throughout the relevant time frame (*i.e.*, the three-year period from December 9, 1997 through December 9, 2000), Whitlock was not allowed to directly or indirectly sell the Cemetery to them during that period. Thus, even though appellants received the Contractually-required notice of proposed sale from Whitlock, the Contractual right of first refusal was never necessarily in play at any relevant time as regards the Fuemmelers or AMC, as the Contract clearly and unambiguously gave appellants the option either to sue to enforce the

---

**16.** We further note that at the circuit court level, appellants alleged that although Whitlock's "gift" of a Cemetery worth at least $55,000 to the Fuemmelers occurred on August 28, 1998, as of late April 2003, Whitlock had not filed a federal gift tax return pertaining to the transaction. Based on this, they contended that Whitlock's failure to file such a return, while not conclusive as to her donative intent, was sufficient to support an inference by the trier of fact that she lacked the required state of mind to make the gift for the purposes of this civil action. As case law supports this contention (*see Gruen v. Gruen*, 68 N.Y.2d 48, 505 N.Y.S.2d 849, 496 N.E.2d 869, 872 (1986)), this is yet another independent reason summary judgment on the issue of Whitlock's donative intent would be inappropriate.

clause prohibiting the direct or indirect sale of the Cemetery to a competitor, or to exercise their entirely separate right of first refusal if they chose not to enforce that clause. In other words, during the first three years, Whitlock could sell only to a non-competitor of appellants, subject to appellants' right of first refusal. After that three-year period, Whitlock could sell to anyone, but again subject to appellants' right of first refusal. Accordingly, the notice of proposed sale to the Fuemmelers (who were, as we have already held, business competitors of appellants within the meaning of the Contract) was not effective to start the running of the forty-five business day period during which appellants could validly exercise their Contractual right of first refusal.[17] Therefore, we reject the Fuemmelers' and AMC's second alternative argument in support of summary judgment.

■ Finally, the Fuemmelers and AMC present a third alternative argument in support of summary judgment in their favor on Counts I and II of appellants' second amended petition. They argue that inasmuch as appellants' present lawsuit was filed on April 25, 2000 (some 20 months after Whitlock purportedly "gifted" the Cemetery to the Fuemmelers on August 28, 1998), the Contractual restriction on direct or indirect sale of the Cemetery to a direct or indirect competitor of appellants can no longer be enforced as to them since (1) that clause became "moot" after December 9, 2000, thereby leaving appellants no recourse against them but only against Whitlock; and (2) by "sitting on their rights," appellants have thereby not only "waived" their right to specific performance of the terms of their Contract with Whitlock, but also their right to seek any form of injunctive relief against the Fuemmelers and AMC. Once again, we disagree.

As we have already held, whether Whitlock had the required donative intent to make and did make a valid *inter vivos* gift of the Cemetery to the Fuemmelers on August 28, 1998 is a genuine and disputed issue of material fact remaining to be resolved at trial. As appellants filed the present action on April 25, 2000, which was more than seven months *before* the three-year period during which the Contract prohibited Whitlock from directly or indirectly selling the Cemetery to a direct or indirect competitor of appellants had run, that clause of the contract (and appellants' rights to enforce it, either by specific performance or by injunction) is not moot, as the present action tolled the running of the three-year period, thereby preserving appellants' rights to seek relief by those mechanisms. *See Furniture Mfg. Corp. v. Joseph,* 900 S.W.2d 642, 648–49 (Mo.App. W.D.1995).

Appellants' first point is granted.

## IV.

In their second point, appellants argue that the circuit court erred in entering

---

**17.** *Hendricks v. Northcutt,* 820 S.W.2d 689 (Mo.App. S.D.1991), which is the sole case relied on by the Fuemmelers and AMC in support of their argument to the contrary, is inapposite. As noted by appellants, unlike the case *sub judice,* the contract construed by the Southern District in *Hendricks* did not contain a non-compete clause, and the court was not required to give meaning and effect to two simultaneously-operating, independent clauses. Furthermore, in *Hendricks* the plaintiffs did absolutely nothing to invoke their rights for several years, *id.* at 691, whereas here, appellants sued on the Contract to prevent the sale to the Fuemmelers within a short time after discovering, on their own and with no assistance from Whitlock, the identity of the buyers, and realizing that they were business competitors. And finally, although not dispositive in any way, that suit, which was filed on May 25, 1998, was brought within the forty-five business day window during which appellants could validly exercise their Contractual right of refusal.

summary judgment against them on Count IX of their second amended petition because they pled all the required elements of a *prima facie* tort and no other recognized tort theories were available to recover under the theory of recovery pled in that count. We agree.

At the outset, Whitlock argues that this point should be summarily denied on jurisdictional grounds, contending that appellants' notice of appeal does not meet the requirements of Rule 81.08(a), since it did not expressly refer to the circuit court's June 12, 2003 judgment entering summary judgment against appellants on Count IX. We disagree. "[A] notice of appeal which can reasonably be construed as an attempt in good faith to appeal from a final judgment or appealable order shall be deemed sufficient." *Weller v. Hayes Truck Lines,* 355 Mo. 695, 197 S.W.2d 657, 660–61 (1946). "Technical adherence to the formal averments of a notice of appeal is not jurisdictional, and the averments are to be liberally construed to permit appellate review so long as the opposing party is not misled to his or her irreparable harm." *L.J.B. v. L.W.B.,* 908 S.W.2d 349, 351 (Mo. banc 1995). " 'Consequently, it is the duty of an appellate court freely to exercise its jurisdiction to provide a review on the merits in every instance that it may properly do so.' " *Lake Winnebago v. Sharp,* 652 S.W.2d 118, 122 (Mo. banc 1983) (quoting *Weller,* 197 S.W.2d at 659).

Whitlock's argument completely ignores the critical fact that *both* the May 7, 2003 judgment entering summary judgment against appellants on Counts I through VII of their second amended petition *and* the June 12, 2003 judgment entering summary judgment against appellants on Count IX of their second amended petition were attached to the June 13, 2003 Notice of Appeal filed by Wills and WPS and served on counsel for all respondents.

Moreover, in the section of the Notice titled "JUDGMENT OR ORDER APPEALED FROM: (ATTACH A COPY OF JUDGMENT)," appellants entered "Attached." This was more than sufficient compliance with Rule 81.08(a) (*cf., e.g., Robin Farms, Inc. v. Bartholome,* 989 S.W.2d 238, 245 (Mo.App. W.D.1999); *Allison v. Sverdrup & Parcel & Assocs., Inc.,* 738 S.W.2d 440, 443–44 (Mo.App. E.D. 1987)), and Whitlock's argument to the contrary is unsupported by any on-point case authority. Furthermore, Whitlock does not even allege that she was misled to her irreparable harm. Accordingly, her jurisdictional argument is rejected and we will consider appellants' second point on its merits.

The trial court ruled that as pled by appellants, Count IX was "an impermissible attempt by plaintiffs to inappropriately prosecute a duplicative tort theory or claim ... [which] would be applicable under the attendant facts and circumstances." This ruling was erroneous, as the theory of recovery pled in Count IX depended on a different set of operative facts and conduct and was not duplicative of any other, more traditional tort theories of recovery.

Whitlock is correct that where the same essential facts and conduct underlie both theories of recovery, the doctrine of *prima facie* tort cannot be invoked, for it is not a duplicative remedy for claims that can be prosecuted under other traditionally recognized tort theories and "cannot be utilized when a recognized tort is otherwise available." *Woolsey v. Bank of Versailles,* 951 S.W.2d 662, 668 (Mo.App. W.D.1997). However, the same facts and conduct do not underlie both theories of recovery pled by appellants. The factual basis for Counts I through VII was that the August 28, 1998 conveyance of the Cemetery from Whitlock to the Fuemmelers was a direct

or indirect "sale" to a direct or indirect business competitor of appellants, and was, therefore, invalid under the Contract. In Count IX, appellants did not rely on the Contract at all, but specifically alleged, *in the alternative* to the allegations in Counts I—VII, that the conveyance was a legally valid gift *inter vivos* designed to evade or circumvent the otherwise applicable provisions of the Contract.[18] They further expressly pleaded that the gift was actionable in *prima facie* tort; that is: (1) that it was an intentional lawful act by defendant Whitlock; (2) that defendant Whitlock intended to injure the plaintiffs thereby; (3) that plaintiffs were damaged thereby; and (4) there was an absence of, or insufficient justification for, defendant Whitlock's act of gifting the Cemetery to the Fuemmelers.[19] In Count IX, appellants also pled similar *prima facie* tort claims arising from Whitlock's acts in purchasing and foreclosing on the promissory note and deed of trust, and the subsequent forced sale of the Nevada, Missouri, funeral home owned by appellants.

■ If the August 28, 1998 conveyance of the Cemetery from Whitlock to the Fuemmelers was, in fact, a gift rather than a sale, Whitlock has not identified any existing nominate tort theory with which appellants' *prima facie* tort claim as to that gift would have been duplicative. Nor has she identified any such theory with regard to the promissory note/foreclosure claims in Count IX. *See generally Killion v. Bank Midwest, NA,* 987 S.W.2d 801, 812–13 (Mo.App. W.D.1998) (recognizing the applicability of the *prima facie* tort doctrine in cases involving foreclosure).[20] Accordingly, appellants were not precluded, at least at this stage of the case, from seeking recovery against her in *prima facie* tort on the claims pertaining to the Cemetery and the promissory note. Point granted.

### Conclusion

For the foregoing reasons, we hold that neither Whitlock, the Fuemmelers, nor AMC were entitled to the entry of judgment as a matter of law on Counts I through VII and IX of the second amended petition filed by Wills and WPS. The circuit court's grant of summary judgment in their favor is, therefore, reversed and

---

**18.** Appellants were clearly authorized to plead such alternative theories of recovery. *Rule 55.06(a)* ("A party asserting a claim to relief as an original claim ... may join, either as independent or as alternate claims, as many claims, legal or equitable, as the party has against an opposing party."); *Rule 55.10* ("A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses.... A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds."); *Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 S.W.2d 546, 554 (Mo.App. S.D.1983).

**19.** These are, of course, the four required elements of a claim of *prima facie* tort. *Woolsey,* 951 S.W.2d at 668.

**20.** Although she cites no case authority whatsoever, Whitlock claims that tortious interference with contract is such a theory. Whitlock is mistaken, because to apply it here would require proof that Whitlock intentionally caused a breach of the contract between appellants and the original holder of the note. *See Hamilton v. Spencer,* 929 S.W.2d 762, 764 (Mo.App. W.D.1996). As the promissory note at issue here was a freely negotiable instrument, Whitlock's purchase of the note from its original holder did not cause him to breach his contract with appellants. " 'No liability arises for interfering with a contract or business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification.' " *Id.* at 765 (quoting *Forkin v. Container Recovery Corp.,* 835 S.W.2d 500, 502 (Mo.App. E.D. 1992)).

the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.